UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BLAIR F. WOLFRAM, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 04105 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SANDRA M. WOLFRAM, REBECCA A. WOLFRAM, and CHARLES URBAN, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Duane Wolfram's will ordered his executor to create two trusts. One, the Marital Trust, was to provide for Duane's wife, Sandra Wolfram. The other, the Family Trust, was to provide for Sandra and Duane's children, including Blair Wolfram. (Sandra is Blair's stepmother.) Sandra was executor of Duane's estate and a co-trustee of the two trusts. Duane died and his estate went through probate in the late 1990s. Now, Blair sues Sandra, alleging that she kept Duane's money for herself instead of funding and administering the trusts per Duane's wishes.[1] (He also names Rebecca Wolfram and Charles Urban as defendants but does not allege that they did anything wrong; they are named as necessary parties.) Sandra moves to dismiss. R. 13. For the reasons stated below, her motion is denied.

---

[1]Subject matter jurisdiction arises under 28 U.S.C. § 1332. No plaintiff is a citizen of the same state as any defendant: Blair is a citizen of Minnesota; Sandra of Illinois; Rebecca of Illinois; and Charles of Wisconsin. R. 5, Compl. ¶¶ 1-4. The amount in controversy is, at least, $600,000. *Id*. ¶ 6. Citations to the record are "R." followed by the docket number.

## I. Background

Duane Wolfram died in 1996, leaving a will and codicil. Compl. ¶¶ 9-11. Sandra Wolfram, Duane's wife, administered Duane's estate. *Id.* ¶ 20. The will instructed Sandra to establish a Marital Trust and a Family Trust, funding them with specified assets from Duane's estate. *Id.* ¶¶ 15, 17. The will named Sandra, Duane's wife, as co-trustee of both trusts. *Id.* ¶ 19. (The other co-trustee was Warren D. Moburg, who is Sandra's brother. *Id.*) Blair Wolfram was a named beneficiary of the Family Trust. *Id.* ¶ 18.

As executor, Sandra owed a fiduciary duty to the legatees of Duane's will, including Blair. *Id.* ¶ 29; *see also In re Estate of Talty*, 877 N.E.2d 1195, 1204 (Ill. Ct. App. 2007) ("The executor owes a fiduciary duty to both the testator's estate and the beneficiaries named in the will."). And, as trustee of the trusts, Sandra owed a fiduciary duty to the beneficiaries of the trusts, including, again, Blair. *Id.* ¶ 30; *see also Obermaier v. Obermaier*, 470 N.E.2d 1047, 1051 (Ill. Ct. App. 1984) ("A trustee owes the highest duty to his beneficiary to fully and completely disclose all material facts when he is dealing with the trust."). According to the complaint's allegations, which must be accepted as true at this stage of the case, since Duane's death, Blair was "led to believe that [the] Family Trust had been funded." *Id.* ¶ 23.

Yet, despite the will's instructions, Sandra never funded the trusts. *Id.* ¶ 26, 28. Instead, Sandra took control of the assets and used them for her own benefit, cutting out Blair and the other beneficiaries. *Id.* ¶ 36. Nonetheless, the probate of Duane's estate closed in 1997 with the probate court noting that "all acts necessary

for the full administration of the estate have been performed according to law." R. 14 [Def.'s Br.] at Exh. A.[2]

At some point, Blair started to ask Sandra about the Family Trust. Blair wrote her in 2013, asking for the name of the lawyer administering the Family Trust. Compl. ¶ 24. Sandra refused to tell him, calling the information "personal and private." *Id.*; Compl. at Exh. 3. She did, however, confirm that Blair was a named beneficiary. *Id.* Sandra also refused Blair's request for an accounting of her actions as trustee. *Id.* ¶ 27. Blair also apparently sought information from Warren Moburg, who is Sandra's brother and the man designated by the will as Sandra's co-trustee. *Id.* ¶ 26. But Moburg has never acted as trustee, and was told by Sandra that no trusts were established. *Id.* ¶¶ 25-26.

Blair sued Sandra, alleging five causes of action: breach of fiduciary duty (Count 1), fraud (Count 2), constructive trust (Count 3), accounting (Count 4), and "removal" (Count 5) (*i.e.*, to remove Sandra as trustee). Compl. ¶¶ 37-77. Sandra moves to dismiss the case for lack of subject matter jurisdiction and, assuming that fails, to dismiss the fraud and constructive trust claims as inadequately pled. Def.'s Br. at 1.

---

[2]Sandra's motion for judicial notice of the order of discharge attached to her motion to dismiss is granted. Def.'s Br. at 4 & Exh. A; Fed. R. Evid. 201(b)(2). This extends to the limited facts that the court closed probate and that it said what it said in its order. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997). The motion is denied to extent it calls for judicial notice that, in fact, "all acts necessary for the full administration of the estate have been performed according to law." *Id.*

3

## II. Legal Standard

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to assert a "lack of subject-matter jurisdiction" over the plaintiff's claims. Rule 12(b)(1) challenges can be facial—asserting that the complaints' allegations, even if true, fail to support jurisdiction—or factual—conceding that the allegations are sufficient but bringing in contrary evidence. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). Sandra does not say which type of challenge hers is. Because Sandra's arguments address Blair's allegations without offering contrary evidence (at this stage of the case), the Court construes her attack as facial. So the Court will "not look beyond the allegations in the complaint, which are taken as true for purposes of the motion." *Id*. at 444.

### B. Motion to Dismiss for Failure to State a Claim

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Most claims fall under Rule 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). And it must "contain sufficient factual matter, accepted as true, to "state a claim to relief that is

4

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Factual allegations, but not legal conclusions, are assumed to be true. *Iqbal*, 556 U.S. at 678-79.

Claims alleging fraud, on the other hand, require the plaintiff to "state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). These circumstances include "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks and citation omitted). In other words, fraud complaints "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (internal quotation marks and citation omitted).

### III. Analysis

#### A. The Probate Exception

Where federal-question or diversity jurisdiction would otherwise cover a claim, the probate exception, if it applies, takes that jurisdiction away. *See Jones v. Brennan*, 465 F.3d 304, 306-307 (7th Cir. 2006) ("The probate exception is usually invoked in diversity cases"). The exception has a "distinctly limited scope," *Marshall v. Marshall*, 547 U.S. 293, 310 (2006), applying to only three types of claims. First, it applies to claims seeking to probate or annul a will or administer an estate—core

5

probate functions. *Marshall*, 547 U.S. at 311; *Markham v. Allen*, 326 U.S. 490, 494 (1946). Second, it applies to claims that, although not invading probate's core, nonetheless "interfere" with it. *Marshall,* 547 U.S. at 311; *Markham*, 326 U.S. at 494. And finally, it applies to claims when there are "sound policy" reasons to do so. *Marshall*, 547 U.S. at 312. Sandra does not argue that any of Blair's claims seek to probate or annul a will or administer an estate. Nor does she argue that the probate exception applies for sound policy reasons.[3] She argues only that each of Blair's claims will interfere, in the sense meant by *Markham* and *Marshall*, with the administration of Duane's estate. Def.'s Br. at 2-4; R. 26, Def.'s Reply Br. at 8-9.

The prohibition on interference comes from *Markham*: "[I]t has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Markham*, 326 U.S. at 494. Despite the "or" that separates them, *Marshall*

---

[3]It does not appear that the sound-policy category of the exception would apply here. The "sound policy" considerations that push claims outside federal jurisdiction arise in cases that state courts are better equipped to handle than federal courts. These include cases requiring active management over long periods—think child custody and guardianship—for which a close relationship with state agencies is helpful. *Marshall*, 547 U.S. at 312 (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992)); *Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007) ("State courts, moreover, are assumed to have developed a proficiency in core probate and domestic-relations matters and to have evolved procedures tailored to them, and some even employ specialized staff not found in federal courts. The comparative advantage of state courts in regard to such matters is at its zenith when the court is performing ongoing managerial functions for which Article III courts … are poorly equipped."). Claims like Blair's involve none of these considerations.

6

determined that *Markham*'s "interfere" language and "assume general jurisdiction" language mean the same thing. *Marshall*, 547 U.S. at 311. Thus, a federal court interferes by assuming control over property in the custody of a state court: "the 'interference' language in *Markham* [is] essentially a reiteration of the general principle that, when one court is exercising *in rem* jurisdiction over a *res,* a second court will not assume *in rem* jurisdiction over the same *res.*" *Id.* So a claim only interferes if it seeks a judgment against a specific thing and that thing is currently subject to the *in rem* jurisdiction of a state court. *Id.*; s*ee also*, *e.g.*, *Curtis v. Brunsting,* 704 F.3d 406, 409-10 (5th Cir. 2013) ("*Marshall* requires a two-step inquiry into (1) whether the property in dispute is estate property within the custody of the probate court and (2) whether the plaintiff's claims would require the federal court to assume *in rem* jurisdiction over that property."); *Lefkowitz v. Bank of New York,* 528 F.3d 102, 108 (2d Cir. 2007) (dismissing, under probate exception, claim seeking disbursement of *specific* funds within an estate currently undergoing probate in state court).

Claims that do not require conflicting assertions of *in rem* jurisdiction fall outside the probate exception's definition of interference. This is so even if they might "interfere," in the ordinary sense of the word, with ongoing probate proceedings. For example, *Marshall* approved a federal bankruptcy court's decision to hear an *in personam* claim between potential heirs even while probate litigation was ongoing. *Marshall*, 547 U.S. at 312. And it did so even though the federal claim

7

was an attack on estate-planning instruments that the "Probate Court [had] declared … valid." *Id*. at 300-302.

Federal courts may also take jurisdiction over claims that would add assets to an estate currently undergoing probate. *Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir. 2008) ("The judgment sought would just add assets to the decedent's estate; it would not reallocate the estate's assets among contending claimants or otherwise interfere with the probate court's control over and administration of the estate."); *see also Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 24 (1st Cir. 2010) ("Because neither the money nor the apartment are yet part of the decedent's estate, neither are yet in the custody of a Puerto Rico probate court. Indeed, the very relief sought here is enlargement of the decedent's estate through assets not currently within it."). If the assets need to be added to the estate they are, of course, not currently a part of the estate and so not (yet) under control of the probate court. *Id*.

The upshot of this is that, under *Marshall*, qualifying as interference requires conflicting *in rem* jurisdiction. 547 U.S. at 311; *see also, e.g.*, *Curtis*, 704 F.3d at 409-10. And there cannot be conflicting *in rem* jurisdiction if no state court has *in rem* jurisdiction over the property in dispute. Put another way: For a claim in federal court to interfere under *Marshall*, there must be some *res* under a state court's *in rem* jurisdiction. Otherwise, there is nothing to interfere with.

So the probate exception's prohibition on interference boils down to this: It prohibits federal courts from exercising subject matter jurisdiction over claims that

8

interfere with state court proceedings; claims only interfere with state court proceedings if they require the federal court to take *in rem* jurisdiction over a *res* currently subject to a state court's *in rem* jurisdiction; so if there never was a state court proceeding over the *res* or all state court proceedings involving the *res* have ended, then there is nothing to interfere with and the probate exception is inapplicable. *See Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007) (construing *Jones* as holding that "a conspiracy between a guardian and others to violate [the plaintiff's] rights in the course of their administration of her father's estate … could be litigated in federal court [because] [t]he father had died and the probate of his estate had been completed"); *see also Stiles v. Whalen*, 2013 WL 6730797, at *4 (N.D. Ill. Dec. 20, 2013) ("[Plaintiff's] claims do not … require the court to dispose of property in the custody of a state court; in fact, there are no pending probate or other state court proceedings involving the wills or trusts.").

This principle dooms Sandra's dismissal motion. Probate of Duane's estate is long closed. Def.'s Br. at Exh. A ("IT IS ORDERED that … the estate is closed"). And Sandra points to no other state-court proceeding involving the property at issue here. So there is no state court exercising *in rem* jurisdiction that would prevent the exercise of subject matter jurisdiction in this federal case. The probate exception does not apply.

Sandra's three arguments to the contrary are rejected. First, Sandra argues that "[w]here, as here, the resolution of the federal action hinges on the determination of whether defendant acted properly with respect to his

9

administration of the Estate during his tenure as co-trustee and co-executor the probate exception applie[s]." Def.'s Br. at 3 (internal punctuation omitted). But under *Marshall* it is nature the required jurisdiction, not the nature of the required determination, that controls. *Marshall*, 547 U.S. at 311-12. That distinction explains why *Jones*, as construed by *Struck*, allowed a claim to proceed in federal court even though it dealt with whether administrators acted properly in administering an estate; it did so because the state-court proceeding was over. *Struck*, 508 F.3d at 860. Were Sandra correct, *Jones* would have come out the other way.

Next, Sandra asks the Court to disregard the "labels" Blair applies to his claims. Def.'s Br. at 3-4. True, labels are beside the point, but that does not support the dismissal motion. Per *Marshall*, the Court has focused on whether Blair's claims require the Court to take *in rem* jurisdiction over property under the *in rem* jurisdiction of a state court. They do not. So Blair's claims do not fall under the probate exception.

Finally, Sandra cites an unpublished, Seventh Circuit decision (formally, a "nonprecedential disposition") to argue that "the fact that probate administration is complete and the executor's actions approved does not limit the application of the probate exception." Def.'s Br. at 3 (citing *Bedree v. Bedree*, 396 Fed. App'x 312 (7th Cir. Oct. 1, 2010)). But probate might not have been closed in *Bedree*. A prior Seventh Circuit decision in the case, also unpublished, suggests that probate was not over. *Bedree v. Lebamoff*, 202 Fed. App'x 913, 915 (7th Cir. Sept. 27, 2006) ("the

10

probate proceedings were ongoing"). And the decision Sandra cites mentions a great deal of state-court litigation that might have been ongoing. *Bedree*, 396 Fed. App'x at 313 ("James peppered the Indiana state courts with motions until a state-court judge barred him from filing *any more actions* relating to Emily's estate.") (emphasis added). Sandra cites only *Bedree* to support her argument that the close of state-court proceedings has no bearing on the probate exception. Because the decision cannot help her, this argument is rejected.

And, what's more, *Bedree* actually hurts Sandra's case in other ways. Sandra could have argued that legitimate concerns arise from allowing federal courts to hear claims arising from closed estates, as *Marshall* did and as Blair asks this Court to do. These concerns are real. For example, if the federal courts can undo—even incidentally—what a state probate court just did, then the individuals interested in the estate will have no certainty about which assets they will receive. *See Dragan v. Miller*, 679 F.2d 712, 714 (7th Cir. 1982) (identifying certainty as a "practical reason" for the probate exception). But *Bedree* shows that other federal-court doctrines mitigate these concerns. In *Bedree*, the *Rooker-Feldman* doctrine was the principle reason that the plaintiff's claims were dismissed. 396 Fed. App'x at 313. *Rooker-Feldman* "prohibits lower federal courts from reviewing decisions of the state courts in civil matters." *Id*. And, assuming the would-be federal litigant was a party to the state-court judgment, issue preclusion and claim preclusion could apply as well. *See* 28 U.S.C. § 1738. Just because a claim might survive the probate

exception does not mean that it will be heard in federal court or, if it is heard, that the plaintiff will get what it wants.

Ultimately, the Court will deny Sandra's motion because there is no state-court proceeding with which to interfere. But even if there were, all but one[4] of Blair's claims would still be safe from the probate exception for other reasons. First, breach of fiduciary duty and fraud claims like Blair's are routinely held to fall outside the probate exception—even when probate litigation is ongoing in state court—because they are *in personam*, as opposed to *in rem*, claims. *Jones*, 465 F.3d at 307-08 (holding that breach of fiduciary claim falls outside probate exception); *Downey v. Keltz*, 2012 WL 280716, *3 (N.D. Ill. Jan. 31, 2012) (collecting cases); *see also Marshall*, 547 U.S. at 312 ("Vickie seeks an *in personam* judgment against Pierce, not the probate or annulment of a will."). Second, Blair's accounting claim is also based on a breach of fiduciary duty. Compl. ¶¶ 60-65. Since fiduciary-breach claims are safe from the probate exception, so too are accounting claims. *Downey*, 2012 WL 280716, at *3. And finally, Blair's constructive trust claim, though an *in rem* claim, is specifically directed at assets in Sandra's possession; not assets in the possession of any state court. Compl. ¶ 59 ("A constructive trust should be imposed on the funds … which are now held by Sandra M. Wolfram."). It too is safe.

---

[4]Blair's claim to have Sandra removed from as trustee is the outlier. That claim appears to seek a judgment requiring this Court to take *in rem* jurisdiction over the trust itself. Thus, the claim apparently would have interfered with state-probate proceedings (but the claim survives the dismissal motion because, as explained when discussing the probate-exception, the probate has closed and the state court has therefore relinquished jurisdiction over the trust).

12

## B. Fraud (Count 2)

Sandra aims two arguments at Blair's fraud claim. First, she appears[5] to argue that Blair alleged nothing more than a breach of fiduciary duty: "the Complaint does not make any allegation that Sandra's actions were anything but a failure to follow the terms of the will." Def.'s Br. at 6. Not so. Blair alleges that Sandra (a) told her brother and nominal co-trustee Warren Moburg that "no [Family] trust was established," Compl. ¶ 26; (b) but also told Blair that he was a beneficiary of the Family Trust, *id.* ¶ 24 & exh. 3; (c) and refused to tell Blair the identity of the Family Trust's attorney. *Id.* This raises an inference of intent and of fraud. That Sandra told Blair that he was a beneficiary of a trust that she also said was never established is consistent with Blair's theory of fraud—that Sandra lulled him and the other beneficiaries into doing nothing to stop her from keeping Duane's assets for herself.

Next, Sandra argues that Blair failed to plead the reliance element of his fraud claim. Def.'s Br. at 5-6. But he did. Compl. ¶ 46. Blair alleges that Sandra withheld material information about the probate of Duane's will and her failures to live-up to her obligations as executor and trustee so that Blair and the other beneficiaries "would not question" her. *Id.* This and Blair's allegation that he did not ask Sandra for the identity of the trust's lawyer until more than 15 years after Duane's death, *id.* ¶ 24, reveal Blair's theory of reliance: Sandra did not say

---

[5]Although it is not the Court's job, the Court has done its best to tease out Sandra's arguments. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.") Any that were intended but not addressed are waived. *Id.* ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.").

13

anything, so Blair, relying on Sandra, his fiduciary, reasonably assumed all was well and did nothing for over a decade. Blair's induced inaction gave Sandra time to dispose of trust assets that may otherwise have gone to Blair. Given the straightforward nature of the alleged fraud, nothing more is required.

### C. Constructive Trust (Count 3)

Sandra argues that Blair has pled his constructive-trust claim into an early grave. Def.'s Br. at 6-7. She notes that "constructive trust is an equitable remedy, and an equitable remedy will not be imposed when there is an adequate remedy at law." *Id.* (quoting *Hagshenas v. Gaylord*, 557 N.E.2d 316, 328 (Ill. App. Ct. 1990)). Sandra argues that Blair has forfeited his equitable claim for a constructive trust by pleading claims for breach of fiduciary duty and fraud, which, she contends, are adequate legal remedies.

Sandra is half right. A plaintiff cannot obtain a judgment giving an equitable remedy and an adequate legal one. *E.g.*, *Hagshenas*, 557 N.E.2d at 328. But judgments and pleadings are two different things. Parties may plead claims for relief that are mutually inconsistent and that therefore could not coexist in a single judgment. Fed. R. Civ. P. 8(d)(3). This allowance for inconsistent pleading encompasses the right to plead an equitable claim as an alternative to a legal one. *See, e.g.*, *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) (allowing inconsistent pleading of breach of contract and unjust enrichment); *Taylor v. Feinberg*, 2011 WL 3157291, at *7 (N.D. Ill. July 26, 2011) (same). Because that is all Blair has done here, Sandra's argument is rejected.

## IV. Conclusion

For the reasons stated above, Sandra's motion to dismiss [R. 13] is denied. The status hearing of January 28, 2015 remains in place. The parties shall file an update initial status report by January 26, 2015, and should start preparing Federal Rule of Civil Procedure 26(a)(1) disclosures.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: January 16, 2014